BETTY SULLIVAN, CONSERVATOR (ESTATE OF EDITH FRYER) *v.* ANTHONY LAZZARI ET AL.*
(AC 32616)

DiPentima, C. J., and Beach and Sheldon, Js.

---

* In the context of this case, the name "Lazzari" has been spelled differently on different documents. The cover of the defendants' brief contains the surname spelled with two "r's" in the case caption. The surname is spelled, however, on the appearance forms with one "r." We therefore spell the surname with one "r" throughout the opinion.

832

Argued February 8—officially released May 29, 2012

*Kimberly Albright-Lazzari* and *Anthony Lazzari,* pro se, the appellants (defendants).

*John F. Conway,* for the appellee (plaintiff).

*Opinion*

BEACH, J. The self-represented defendants, Anthony Lazzari and Kimberly Albright-Lazzari, appeal from the judgment of the trial court rendered in favor of the plaintiff, Betty Sullivan, conservator of the estate of Edith Fryer,[1] in this summary process action. The defendants claim that the court (1) violated their constitutional rights by denying their request for a jury trial, (2) erred in denying their motion to dismiss with prejudice, (3) erred in denying their motion to strike, (4) denied them the right to call material witnesses, (5) erred in determining that the plaintiff had met her burden of proof and (6) erred in permitting the plaintiff to substitute a newly appointed representative of Fryer's estate.[2] We affirm the judgment of the trial court.

[1] During the pendency of this appeal, Christopher J. Donlin, administrator of the estate of Edith Fryer, was substituted as the party plaintiff. See part VI of this opinion. For convenience, we use the term "plaintiff" to refer to the original plaintiff, Sullivan.

[2] The defendants raise additional claims in their brief to which we find no merit, and, accordingly, we will not address them in detail.

The following facts and procedural history are relevant to this appeal. The plaintiff had a complaint dated December 22, 2009, served on the defendants. The complaint alleged that the defendants were in possession of 132 Rock Creek Road, New Haven (premises), and that their right or privilege to occupy the premises had terminated. The complaint further alleged that, although the plaintiff served the defendants on December 9, 2009, with a written notice to quit the premises on or before December 15, 2009, the defendants remained in possession of the premises after December 15, 2009.

At trial, the plaintiff testified to the following. Fryer, the plaintiff's mother, owned the premises, a one-family residence. The defendants were permitted to move into the premises in late 2006. She did not ask them to sign a lease or to pay rent. She first asked the defendants to leave the premises in the summer of 2009. After being appointed conservator of Fryer's estate, the plaintiff commenced an eviction action against the defendants. The defendants refused, however, to leave the premises and, at the time of trial, still resided at the premises.

Following a trial to the court, the court issued a written decision on August 12, 2010, in which it rendered judgment in favor of the plaintiff. The court found that the plaintiff demonstrated by a preponderance of the evidence that the defendants' right to occupy the premises had terminated.[3] The court ordered that a final stay of its order be in effect through September 15, 2010. This appeal followed. Additional facts will be set forth as necessary.

After the defendants filed their appeal, they filed a motion for articulation and a motion for review in this court. The motion for review and the requested relief

---

[3] The "right" in this case was, of course, a privilege extended by the owner or the owner's representative.

were granted and the trial court was ordered to articulate the factual and legal basis for its decision. In its articulation, the court articulated that it had found that the testimony of the plaintiff was "completely credible." The court specifically found that the defendants had been invited to move into the premises and had never been asked to pay rent or to sign a lease. Sometime thereafter, the plaintiff, as conservator, asked the defendants to vacate the premises. The court concluded that the defendants once had a right or privilege to occupy the premises, but that the right or privilege had terminated pursuant to General Statutes § 47a-23 (a) (3).[4]

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Housing Authority* v. *DeRoche*, 112 Conn. App. 355, 361, 962 A.2d 904 (2009).

I

The defendants argue that the court violated their constitutional rights by denying their request for a jury trial. We disagree.

[4] General Statutes § 47a-23 provides in relevant part: "(a) When . . . the owner's . . . legal representative . . . desires to obtain possession or occupancy of any land or building . . . and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner's . . . legal representative . . . shall give notice to each . . . occupant to quit possession or occupancy of such land, building, apartment or dwelling unit . . . before the time specified in the notice for the . . . occupant to quit possession or occupancy."

The defendants were not wrongly deprived of a jury trial because there is no right to a jury trial in a summary process action. General Statutes § 52-215 provides in relevant part: "[T]here shall be no right to trial by jury . . . in a summary process case. . . ."

The defendants argue that § 52-215 is unconstitutional as to summary process actions. They contend that when a plaintiff seeks monetary payments,[5] the occupants must be afforded the right to a jury trial. We do not agree.

First, the defendants' premise is erroneous. Although they stated in their "Motion to Demand a Jury Trial Preserved in the Constitutions" that "the [p]laintiff is seeking monetary payments as described in her '[n]otice to [q]uit,'" the plaintiff seeks in the complaint only possession of the premises. The possibly relevant language in the notice to quit is standard language stating that any payments after service of the notice to quit will be accepted as payments for use and occupancy. Use and occupancy payments during the pendency of an action are not money damages.

Second, the constitutionality of § 52-215, as it pertains to summary process actions, was upheld in *Kredi* v. *Benson*, 1 Conn. App. 511, 514–16, 473 A.2d 333, cert. denied, 193 Conn. 803, 474 A.2d 1260 (1984). In *Kredi*, a summary process action based on nonpayment of rent, the defendants argued that "because the summary process statute in effect in 1818 did not apply to nonpayment of rent actions, because ejectment was the remedy available for nonpayment of rent, and because ejectment was triable to a jury in 1818, a summary process action for nonpayment of rent, therefore, is

[5] The relief available in summary process actions is possession of the premises. Whatever monetary relief may follow, such as payment for use and occupancy, is purely ancillary. In the present case, moreover, the complaint sought only possession of the premises.

now triable to a jury." Id., 514–15. The court rejected that claim and stated that "while article first, § 19 of the Connecticut constitution provides that the right of trial by jury shall remain inviolate, this did not mean that such a right could not be subjected to reasonable conditions and regulations. . . . [I]n some cases, where the monetary interests are relatively small, such regulations and conditions operate to cut off the right completely. . . . In establishing such conditions and regulations the legislature is free to use the character of the tenancy as a benchmark rather than its monetary value so long as there is a rational basis for such procedure." (Citations omitted; internal quotation marks omitted.) Id., 515. The court concluded that the legislature had a rational basis for the conditions and regulations set forth in § 52-215. Id., 515–16.

"Article first, § 19, of the constitution of Connecticut, as amended by article four of the amendments, provides in relevant part: The right of trial by jury shall remain inviolate . . . . The provision guarantees the right to a jury trial in all cases for which such a right existed at the time of the adoption of that constitutional provision in 1818. . . . The fundamental right to a jury trial, however, is subject to certain limitations. . . . One limitation is that the right does not extend to equitable claims." (Citations omitted; internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 532, 4 A.3d 288 (2010).

The summary process statute was enacted in 1806. General Statutes (1808 Rev.), p. 450, tit. 97, c. 23; see also *Lorch* v. *Page*, 97 Conn. 66, 72, 115 A. 681 (1921). This statute provided for a jury trial. "Incorporated in the act was a provision giving power to any assistant or justice of the peace in the town in which the leased premises were situated to issue a summons to the lessee to appear before him, and giving him the further power to summon a jury of six disinterested freeholders of

the town to pass upon certain issues. . . . In 1949, the General Assembly repealed this section." *Ruttenberg* v. *Dine*, 137 Conn. 17, 18, 74 A.2d 211 (1950).

Until the enactment of the Public Acts of 1957, the remedy of summary process applied only in cases involving a lease that had been terminated. See *Jo-Mark Sand & Gravel Co.* v. *Pantanella*, 139 Conn. 598, 602–603, 96 A.2d 217 (1953) (remedy of summary process available only when lease had been terminated); see also *Cohn* v. *Fennelly*, 138 Conn. 474, 476, 86 A.2d 183 (1952) (essential to summary process action that lease existed between parties and that it was terminated); *Thompson* v. *Coe*, 96 Conn. 644, 659, 115 A. 219 (1921) ("[t]he only jurisdiction of the justice court in summary process was to determine as to the right of possession on account of forfeiture for nonpayment of rent"). By Public Acts 1957, No. 291, the remedy of summary process was expanded. See *Southington* v. *Francis*, 159 Conn. 64, 69 n.2, 266 A.2d 387 (1970). The 1957 act amended the statute now codified as § 47a-23 to include situations in which premises are claimed to be "occupied by one who has no right or privilege to occupy said premises, or where one originally has the right or privilege to occupy said premises but such right or privilege has terminated and the owner . . . shall desire to obtain possession or occupancy of the same . . . ." Public Acts 1957, No. 291, § 1.

In 1818, then, the right to a jury trial existed in summary process matters; *Ruttenberg* v. *Dine*, supra, 137 Conn. 18; but until 1957, only cases involving leases could be brought by summary process. The right to a jury trial in cases involving the revocation of a right or privilege to occupy premises did not exist at any time. Prior to 1957, cases involving the revocation of a privilege to occupy premises apparently were tried in equity. See, e.g., *Chornock* v. *Popp*, 15 Conn. Sup. 153 (1947) (no legal remedy existed and equitable injunction issued

when bishop's permission to occupy rectory ended); *Roy* v. *Moore*, 85 Conn. 159, 163, 82 A. 233 (1912) (generally suit in equity for injunction lies in cases where title not in dispute).[6] Therefore, the defendants were not entitled to a jury trial in the present case.

## II

The defendants also claim that the court erred in denying their motion to dismiss with prejudice. We disagree.

"We previously have articulated our standard of reviewing challenges to the trial court's subject matter jurisdiction in a summary process action on the basis of a defect in the notice to quit. Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity. . . . This court's review of the trial court's determination as to whether the notice to quit served by the plaintiff effectively conferred subject matter jurisdiction is plenary." (Citations omitted; internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009).

In January, 2010, the defendants filed a motion to dismiss with prejudice in which they argued that the court lacked subject matter jurisdiction because the notice to quit was defective in that it (1) did not specify the exact room of the premises that the defendants claim the plaintiff gave them permission to occupy, (2) was not served after the tenth day of the month under General Statutes § 47a-15a and (3) did not contain the exact name of the occupants. After a hearing, the court

---

[6] We note that even if the right to a jury trial in such cases existed in 1818, the reasoning of *Kredi* v. *Benson*, supra, 1 Conn. App. 511, nonetheless applies.

denied the motion. The court held that the defendants' arguments did not support the conclusion that the court did not have subject matter jurisdiction.

The court properly denied the defendants' motion because the notice to quit complied with the requirements of § 47a-23 (b), which provides in relevant part: "The notice shall be in writing substantially in the following form: 'I (or we) hereby give you notice that you are to quit possession or occupancy of the (land, building, apartment or dwelling unit, or of any trailer or any land upon which a trailer is used or stands, as the case may be), now occupied by you at (here insert the address, including apartment number or other designation, as applicable), on or before the (here insert the date) for the following reason (here insert the reason or reasons for the notice to quit possession or occupancy using the statutory language or words of similar import, also the date and place of signing notice). A.B.' If the owner or lessor . . . knows of the presence of an occupant but does not know the name of such occupant, the notice for such occupant may be addressed to such occupant as 'John Doe', 'Jane Doe' or some other alias which reasonably characterizes the person to be served."

The notice to quit tracked the statutorily required language. First, the notice to quit identified the premises. It stated: "I hereby give you notice that you are to quit possession and occupancy of the dwelling now occupied by you at #132 Rock Creek Road, New Haven . . . ." The court credited the plaintiff's testimony that the defendants occupied the entire house, except for the bedroom of the plaintiff's brother, and that they had access to the entire house. There was no ambiguity or mistake regarding what premises were the subject of the notice to quit. Although in other circumstances more specificity may be necessary in order to avoid ambiguity or uncertainty; see *Vogel* v. *Bacus*, 133 Conn.

95, 98, 48 A.2d 237 (1946); there was no ambiguity or uncertainty on the facts of this case. See *Rodrigues* v. *Villanueva*, Superior Court, judicial district of Hartford-New Britain at Hartford, Housing Session, Docket No. 95365 (February 2, 1998).

Second, the alleged failure of the plaintiff to comply with § 47a-15a did not deprive the court of subject matter jurisdiction because that statutory section does not apply. Section 47a-15a provides in relevant part: "If rent is unpaid when due and the tenant fails to pay rent within nine days thereafter . . . the landlord may terminate the rental agreement . . . ."[7] This statutory section, which permits a time period for payment of rent, does not apply because the present case does not concern unpaid rent or a rental agreement.

Third, the defendants claim that one of their last names was misspelled on the notice to quit. If so, the misspelling was a clerical error that does not deprive the court of subject matter jurisdiction. Additionally, it was not necessary to include the name of a minor child in the notice to quit because General Statutes § 47a-26h (a) provides in relevant part: "A summary process judgment shall bind (1) the named defendants and any minors holding under them . . . ."

### III

The defendants next claim that the court erred in denying their motion to strike. We disagree.

In January, 2010, the defendants filed a motion to strike the plaintiff's complaint. The defendants essentially argued that the complaint failed to state facts necessary to support their claims. The court denied the motion.

---

[7] The notice to quit was served on December 9, 2009.

Section 47a-23 [8] provides in relevant part: "(a) When . . . the owner's . . . legal representative . . . desires to obtain possession or occupancy of any land or building . . . and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner's . . . legal representative . . . shall give notice to each . . . occupant to quit possession or occupancy of such land, building, apartment or dwelling unit . . . before the time specified in the notice for the . . . occupant to quit possession or occupancy."

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] . . . and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Ameriquest Mortgage Co.* v. *Lax*, 113 Conn. App. 646, 649, 969 A.2d 177, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). General Statutes § 47a-23a (a) provides in relevant part: "If, at the expiration of the three days prescribed in section 47a-23, the . . . occupant neglects or refuses to quit possession or occupancy of the premises, any commissioner of the Superior Court may issue a writ, summons and complaint which shall be in the form and nature of an ordinary writ, summons and complaint in a civil process, but which shall set forth facts justifying a judgment for immediate possession or occupancy of the premises and make a claim for possession or occupancy of the premises. . . ." Practice Book § 10-20 states in relevant

---

[8] General Statutes § 47a-23, which sets forth requirements pertaining to notices to quit, is relevant to the requirements of the complaint, which are specifically addressed in General Statutes § 47a-23a.

part that a complaint "shall contain a concise statement of the facts constituting the cause of action . . . ." The defendants also argue that the "complaint is vague and unconstitutional as applied in this present matter, and does not set forth the necessary facts to place the occupants on proper and timely notice so the occupants can properly prepare a defense."

The complaint was not deficient in any of the ways claimed by the defendants. In the complaint, the plaintiff alleged that the defendants were in possession of the identified premises despite the termination of their right or privilege to occupy it. The complaint further alleged that, although the time designated in the notice to quit possession of the premises had passed, the defendants remained in possession. The allegations provided the essential facts necessary to respond and provided sufficient notice.

## IV

The defendants next claim that the court "unlawfully denied us of our legal right to have and call material and rebuttal witnesses and present vital evidence in our defense, and denied us of our full legal right to be heard, of fair procedures and of a fair trial." We are not persuaded.

The defendants specifically argue that the court erred in denying their request for subpoenas and in denying their "motion for a kangaroo mistrial and . . . motion [to] dismiss with prejudice . . . ." On May 12, 2010, the defendants filed a "motion for a kangaroo mistrial [and] motion to dismiss with prejudice" in which they argued that the court improperly had denied their requests for material witnesses and denied their right to a fair trial. Also on that date, the defendants filed multiple requests for subpoenas. The defendants explained that the May 12, 2010 requests were in response to a request by the court, in connection with

an earlier request for subpoenas, that the defendants specifically state the subject matter of each witness' testimony and the legal claim that the testimony would support. On May 13, 2010, prior to the start of evidence, the court denied the May 12, 2010 requests, stating: "I was looking for specific information I didn't get, but I've denied the requests without prejudice . . . . If we go through today, and I find that I need evidence from any of those witnesses then I'll continue the matter and we'll bring them in."

Our rules of practice confer on courts discretionary authority to issue subpoenas on behalf of self-represented parties. Practice Book § 7-19 provides: "Self-represented litigants seeking to compel the attendance of necessary witnesses in connection with the hearing of any civil matter, including matters scheduled on short calendar or special proceeding lists or for trial, shall file an application to have the clerk of the court issue subpoenas for that purpose. The clerk, after verifying the scheduling of the short calendar hearing, special proceeding or trial, shall present the application to the judge before whom the matter is scheduled for hearing, or the administrative judge or any judge designated by the administrative judge if the matter has not been scheduled before a specific judge, which judge shall conduct an ex parte review of the application and may direct or deny the issuance of subpoenas as such judge deems warranted under the circumstances, keeping in mind the nature of the scheduled hearing and future opportunities for examination of witnesses, as may be appropriate." Accordingly, the court's ruling is reviewed under an abuse of discretion standard.

The defendants did not indicate in their briefs what additional evidence they wished to offer, through witnesses they wished to have subpoenaed or otherwise, that was excluded from evidence. The court indicated that the subpoena requests were not specific enough,

but that it would continue the matter if additional evidence would help the defendants' case. The issues germane to the trial were narrow. The court apparently determined that no additional evidence was needed. We conclude that the court did not abuse its discretion in denying the subpoena requests or denying the defendants' motion.

Furthermore, we note that the defendants were permitted to cross-examine extensively the plaintiff's witnesses, H. Mark DeAngelis, the state marshal who served the notice to quit, and the plaintiff, the conservator of Fryer, who owned the premises. After Anthony Lazzari finished cross-examining the plaintiff, Kimberly Albright-Lazzari cross-examined her. The defendants also were permitted to present their own case, in which they both testified as to their version of the events. The defendants did not contest that the plaintiff was the conservator of Fryer, the owner of the premises, that the plaintiff gave them permission to live in the house, that they did not sign a lease, that they later were requested to leave or that they were served with a notice to quit. It is by no means clear how additional evidence could have advanced the defendants' cause. The defendants were given their day in court and were given the due process to which they were entitled.

V

The defendants next seem to claim that the court erred in determining that the plaintiff had met her burden of proof. We disagree.

There was evidence presented at trial from which the court could have determined that the plaintiff had met her burden of proof. DeAngelis testified that he served the notice to quit on the defendants, and the defendants did not dispute that they were served with a notice to quit. The court credited the plaintiff's testimony; she testified that she allowed the defendants to

move into the premises and never asked them to sign a lease or to pay rent. She further testified that Fryer owned the premises and that, after being appointed Fryer's conservator, she asked the defendants to leave the premises. The defendants refused, however, to leave the premises and, at the time of trial, still resided at the premises. The court's conclusion was not erroneous simply because some of the plaintiff's testimony may have been contradicted by testimony of other witnesses. As the trier of fact, it was the court's exclusive province "to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed. . . . The function of the appellate court is to review, and not retry, the proceedings of the trial court." (Internal quotation marks omitted.) *LPP Mortgage, Ltd.* v. *Lynch,* 122 Conn. App. 686, 700, 1 A.3d 157 (2010). The court's findings were properly supported by the evidence.[9]

## VI

The defendants last claim that the court erred in substituting as the plaintiff a newly appointed representative of the estate. We disagree.

On August 30, 2011, while this appeal was pending, a hearing was held in the trial court. At that time, the plaintiff's attorney informed the court of the following.

[9] The defendants also argue that the court erred in referencing stricken testimony in its articulation. The court noted that the plaintiff testified that she permitted the defendants to move into the residence after they had been evicted from other premises. The defendants objected to the testimony that they had been evicted, and the court sustained the objection. Kimberly Albright-Lazzari testified that, prior to moving into the premises, she had lived with her father and her father had been evicted. The defendants' reason for leaving their former residence was not relevant, so that reference to past history was not harmful in the circumstances of this case.

The owner of the premises, Fryer, had died on May 24, 2011, and the plaintiff Sullivan was appointed representative of the estate. Because of financial hardship, the plaintiff moved the Probate Court to appoint someone else to be the representative. On August 16, 2011, the Probate Court appointed attorney Christopher J. Donlin as the administrator of Fryer's estate. The plaintiff's attorney then moved to have Donlin substituted as the plaintiff, which motion the court granted over the defendants' objection.

General Statutes § 52-599 provides in relevant part: "(a) A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months of the plaintiff's death or at any time prior to the action commencing trial and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, within one year after receiving written notification of the defendant's death, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed. . . ."

According to the plain language of § 52-599 (b), the court had the authority to substitute Donlin, the newly appointed representative, in place of the plaintiff. We find no merit to the defendants' arguments that the statute does not apply because the plaintiff resigned as conservator or that Donlin lacks standing. Donlin was

appointed representative by the Probate Court. In order to comply with § 52-599 (b), which provides that a cause of action shall not be lost as a result of the death of one of the parties, the action was continued by Donlin, the representative of Fryer's estate.

The judgment is affirmed.

In this opinion the other judges concurred.