ANNA T. POLLANSKY *v.* STEVEN POLLANSKY ET AL.
(AC 34630)

Lavine, Beach and Keller, Js.

Argued March 21—officially released July 16, 2013

*Robert F. Cohen*, with whom, on the brief, was *Sarah Ann Cohen*, for the appellants (defendants).

*Wayne Christopher Gerlt*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendants, Steven Pollansky, Darby Pollansky, Kyle Pollansky, Anna P. Pollansky, Skyland Properties, LLC, and Pollansky Construction, LLC, appeal from the trial court's judgment of possession rendered in favor of the plaintiff, Anna T. Pollansky. The defendants claim that (1) the court erred in finding that the notice to quit pursuant to General Statutes § 47a-23 (a) (3) was valid, (2) the notice to quit was invalid specifically as to Kyle Pollansky and Anna P. Pollansky, the plaintiff's grandchildren, and (3) the defendants were prejudiced by several of the court's evidentiary rulings. We affirm the judgment of the trial court.

The following facts, as found by the trial court, *Cobb, J.*, and procedural history are relevant to our resolution of this appeal. In the 1960s, the plaintiff and her late husband, Andrew Pollansky, jointly purchased three

adjoining parcels of land in Coventry, totaling 84.5 acres (property). Over the years, the property had been used for commercial and recreational purposes; there were no residences on the property. Andrew Pollansky operated a sand and gravel business on the property until he retired in approximately 1992. Steven Pollansky, the son of Andrew Pollansky and the plaintiff, worked in his father's gravel business on the property from his teenage years until his father retired. After Andrew Pollansky retired, he and the plaintiff permitted the defendants—Steven Pollansky; his wife, Darby Pollansky; and their children Kyle Pollansky and Anna P. Pollansky—to access the property for recreational purposes and, as to Steven Pollansky and Darby Pollansky, for operation of their businesses, Pollansky Construction, LLC, and Skyland Properties, LLC. The plaintiff and Andrew Pollansky gave Steven Pollansky and Darby Pollansky permission to operate their businesses on the property, but there were no written agreements or leases to that effect.

When Andrew Pollansky died in July, 2010, the plaintiff became the sole owner of the property. The plaintiff, who was in her eighties at the time of trial, wished to sell or to rent the property to subsidize her income. The plaintiff asked the defendants to pay rent for the use of the property for their businesses, but the parties had not been able to come to any agreement on rent. As a result, the plaintiff asked the defendants to vacate the property so that she could sell or rent it to obtain additional income, but the defendants refused to do so.

The plaintiff brought a summary process action against the defendants seeking immediate possession of the property. The plaintiff claimed that, although the defendants once had the right and privilege to occupy the property, that right or privilege had terminated. The defendants alleged two special defenses: that Andrew Pollansky had granted one or more of the defendants

an ownership interest in the property; and Kyle Pollansky and Anna P. Pollansky's period of occupancy legally began only when they turned eighteen.

The court found that the plaintiff proved her summary process action: that she was the owner of the property, that she continued to permit the defendants to operate a business on the property after her husband's death, that she terminated her permission when she asked the defendants to vacate the premises and served them with a valid notice to quit, and that the defendants remained in possession. The court found that the defendants had not proven their special defenses. The court entered a judgment of immediate possession in favor of the plaintiff. This appeal followed.

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Sullivan* v. *Lazzari*, 135 Conn. App. 831, 835, 43 A.3d 750, cert. denied, 305 Conn. 925, 47 A.3d 884 (2012).

I

The defendants first claim that the court erred in finding that the notice to quit pursuant to § 47a-23 (a) (3) was valid. We disagree.

We begin by setting forth the "standard of reviewing challenges to the trial court's subject matter jurisdiction in a summary process action on the basis of a defect in the notice to quit. Before the [trial] court can entertain

a summary process action and evict [an occupant], the owner of the land must previously have served the [occupant] with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity. . . . This court's review of the trial court's determination as to whether the notice to quit served by the plaintiff effectively conferred subject matter jurisdiction is plenary." (Citations omitted; internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009). Furthermore, our review of the defendants' argument based on the statutory construction of § 47a-23 (a) (3) is plenary. See *Spears* v. *Garcia*, 263 Conn. 22, 27, 818 A.2d 37 (2003).

On April 28, 2011, the plaintiff served on the defendants a notice to quit[1] possession of the property for the reason that: "The premises described above [are] being occupied by one who originally had the right or privilege to occupy such premises but such right or privilege has terminated (Conn. Gen. Stat. § 47a-23 [a] [3])." The court found that the plaintiff's notice to quit was valid.

Section 47a-23 provides in relevant part: "(a) When . . . the owner's . . . legal representative . . . desires to obtain possession or occupancy of any land or building . . . and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner's . . . legal representative . . . shall give notice to each . . . occupant to quit possession or occupancy of such land [or] building . . . before the time specified in the notice for the . . . occupant to quit possession or occupancy."

The defendants argue that the use of the present perfect tense in the phrase "has terminated" in § 47a-23 (a) (3) means that, in order for the notice to quit to

---

[1] The notice to quit was signed by the plaintiff's attorney.

be valid, the right or privilege to occupy must terminate at some point *prior* to the delivery of the notice to quit and that the notice to quit cannot itself constitute the termination of the right or privilege to occupy. The defendants seem to argue that because the complaint claims that the notice to quit itself terminated the right or privilege, it alleges a legal impossibility and thus does not state a cause of action.

The defendants' argument is based on the legislature's usage of the present perfect tense in the phrase "has terminated" in § 47a-23 (a) (3).[2] "Words and phrases are to be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1 (a); see also *Caldor, Inc.* v. *Heffernan*, 183 Conn. 566, 570, 440 A.2d 767 (1981). "The use of the present perfect tense of a verb indicates an action or condition that was begun in the past and is still going on *or was just completed in the present.*" (Emphasis added.) *Schieffelin & Co.* v. *Dept. of Liquor Control*, 194 Conn. 165, 175, 479 A.2d 1191 (1984). Accordingly, under a technical, though perhaps somewhat metaphysical, examination of the usage of the present perfect tense, a termination that occurs simultaneously with the delivery of a notice to quit was "just completed in the present."[3]

[2] The defendants also cite *Bershtein Enterprises, LLC* v. *Jim Powers*, Superior Court, judicial district of New Haven, Housing Session, Docket No. 0212-73629 (November 1, 2004), in support of their argument that § 47a-23 (a) (3) requires that the right or privilege to occupy must have been terminated prior to the delivery of the notice to quit. First, *Bershtein Enterprises, LLC,* is not binding authority and second, it is factually distinguishable on the basis that the court found that the defendant in that case had a continuing right or privilege to use the premises on the basis of having been granted a life use of the premises. That right could not be arbitrarily terminated by any notice, including a notice to quit, in contradistinction to a privilege granted by the benevolence of the owner.

[3] Somewhat fancifully, perhaps, the owner necessarily has made the determination to terminate the privilege prior to serving a notice to quit.

Moreover, § 47a-23 (a) (3) unambiguously provides that upon termination of the right or privilege to occupy, the owner must provide each occupant with a notice to quit. This section does not expressly provide that an owner's decision to terminate an occupant's right or privilege to occupy must be made known to each occupant at a time prior to the delivery of the notice to quit. If the legislature wanted to provide for such additional notice, it could have done so. See *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150, 12 A.3d 948 (2011) ("[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature" [internal quotation marks omitted]).

Although § 47a-23 (a) (3) is unambiguous in the present context, an examination of the statute as a whole further buttresses the conclusion that the notice to quit can occur simultaneously with the termination of the right or privilege to occupy. Section 47a-23 (a) (1) provides that when a lessor desires to obtain possession of a property and "when a rental agreement or lease of such property . . . terminates" for any of several enumerated reasons, the lessor "shall give notice to each lessee . . . to quit possession or occupancy. . . ." Under this subsection, "[s]ervice of a notice to quit possession is typically a landlord's unequivocal act notifying the tenant of the termination of the lease." (Internal quotation marks omitted.) *Centrix Management Co., LLC* v. *Valencia*, 132 Conn. App. 582, 587, 33 A.3d 802 (2011). If a notice to quit can be sufficient to terminate a lease, it follows, a fortiori, that a notice to quit can be sufficient under (a) (3) where an occupant has no continuing right to occupy and an owner can decide to terminate a tenancy at any time. Section 47a-23 (a) (2), which was added at the same time as (a) (3),[4] also by its plain terms does not include any

---

[4] Originally, the remedy of summary process applied only in cases involving a lease that had been terminated. *Sullivan* v. *Lazzari*, supra, 135 Conn. App. 838. The Public Acts of 1957, No. 291, § 1, amended the statute now

additional notice procedures beyond a notice to quit.[5] Cf. General Statutes § 47a-15 (pretermination notice). The legislature did not expressly provide for any different procedure to apply to § 47a-23 (a) (3).[6] For the foregoing reasons, we conclude that the court properly determined that the notice to quit was valid.

## II

The defendants Anna P. Pollansky and Kyle Pollansky, grandchildren of the plaintiff, claim that the court erred in finding that the notice to quit given to them and the grounds on which it was based were valid. We disagree.

Our review of the court's ruling on the validity of the notice to quit is plenary. See *Bayer* v. *Showmotion, Inc.*, supra, 292 Conn. 388.

The court rejected the defendants' second special defense that the notice to quit was invalid as to Anna P. Pollansky and Kyle Pollansky. The court determined that the notice to quit, which was served on April 28, 2011, and which cited the grounds in § 47a-23 (a) (3) as to all defendants, was valid. More importantly, the

codified as § 47a-23, to include (a) (2) and (a) (3), in other words, to include situations in which premises are claimed to be "occupied by one who has no right or privilege to occupy said premises, or where one originally has the right or privilege to occupy said premises but such right or privilege has terminated and the owner . . . shall desire to obtain possession or occupancy of the same . . . ." Public Acts 1957, No. 291, § 1; see *Sullivan* v. *Lazzari*, supra, 838.

[5] General Statutes § 47a-23 (a) (2) provides that when an owner desires to obtain possession of a premises and "when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises . . . such owner's . . . legal representative . . . shall give notice to each . . . occupant to quit possession or occupancy" of such premises.

[6] Under the defendants' grammatical construction, a notice to quit presumably would be valid if some sort of additional notice had been handed to a defendant a moment before service of the notice to quit. We do not presume such bizarre results.

court found that both Anna P. Pollansky and Kyle Pollansky, like their parents, had permission to occupy the premises and that that permission had terminated. Anna P. Pollansky and Kyle Pollansky argue that the court erred in determining that the notice to quit was valid as to them because notice properly should have been issued under § 47a-23 (a) (2). Prior to the service of the notice to quit, the argument goes, they never had the privilege to occupy the premises.

The relevant provisions of § 47a-23 are as follows: "(a) When . . . the owner's . . . legal representative . . . desires to obtain possession or occupancy of any land or building . . . and . . . (2) when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises; or (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner's . . . legal representative . . . shall give notice to each . . . occupant to quit possession or occupancy of such land [or] building . . . before the time specified in the notice for the . . . occupant to quit possession or occupancy."

Anna P. Pollansky argues that prior to her turning eighteen she would not have been separately named on the notice to quit and, because she was served with a notice to quit on the day of her eighteenth birthday, she never had a chance to obtain a right or privilege to occupy the premises; her occupancy is simply that of a person who turned eighteen, not a tenant. She argues that because she never had a privilege to occupy the premises, the proper ground for the notice to quit would be § 47a-23 (a) (2).

Anna P. Pollansky is correct in that it is not necessary to include the names of minor children in a notice to quit. *Sullivan* v. *Lazzari*, supra, 135 Conn. App. 841; see also General Statutes § 47a-26h (a) (1) (summary

process judgment shall bind any minors holding under named defendants). Her argument concerning April 27, 2011, the date of her eighteenth birthday,[7] however, is misplaced. The notice to quit was dated April 27, 2011, but was served on April 28, 2011. A notice to quit is effective on the date it is served. See *Vidiaki, LLC* v. *Just Breakfast & Things!!! LLC*, 133 Conn. App. 1, 24, 33 A.3d 848 (2012) (rental agreement terminated when valid notice to quit was "served"). While service on her eighteenth birthday may have been sufficient, service the following day was clearly sufficient to serve her as an adult. The court found that the plaintiff gave the defendants, necessarily including Anna P. Pollansky, permission to access the property for recreational and business purposes.[8] As explained in part I of this opinion, the permission terminated on the day the notice to quit was served—April 28, 2011. Because Anna P. Pollansky had permission to be on the property and because that permission had terminated, the notice to quit properly cited § 47a-23 (a) (3) as to her.

Kyle Pollansky argues that, although he was not a minor when served with the notice to quit dated April 27, 2011, "he was not a party to the dismissed prior action, he never received any written or verbal communication by the plaintiff that she wanted him gone, and he too received his first notice with the April 27, 2011 notice to quit." Apparently, he argues that had he been a party to a prior action, he would have known that permission had been terminated.

Whether Kyle Pollansky was a party to a prior dismissed summary process action does not affect the

---

[7] According to the undisputed evidence submitted at trial, Anna P. Pollansky turned eighteen on April 27, 2011. Both parties agree to this date on appeal.

[8] To the extent that this permission was given to Anna P. Pollansky as a minor, that permission is not negated simply by virtue of her having turned eighteen.

validity of the present notice to quit. It does not matter whether he received notice, prior to the service of a notice to quit on April 28, 2011, that his permission to use the property had terminated because such notice is not required. See part I of this opinion. The court found that, like the other defendants, he had been given prior permission to use the property, and that permission was later revoked. Accordingly, § 47a-23 (a) (3) was properly cited as grounds for the notice to quit.

We conclude that the court properly determined that the notice to quit dated April 27, 2011, and served April 28, 2011, was valid as to Anna P. Pollansky and Kyle Pollansky.

### III

The defendants last claim that "they were treated far differently at trial than the plaintiff was treated at trial. Evidence that the plaintiff was allowed to present was not allowed to be rebutted by the defendant. This created a substantially uneven playing field for the defendants." We disagree.

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 452, 927 A.2d 843 (2007).

## A

The defendants argue that the court erred in permitting the plaintiff to present evidence, over the defendants' objection, about personal property located on the premises and not allowing the defendants to introduce rebuttal evidence.

The plaintiff testified that she did not want equipment, such as bulldozers and trucks, owned by her late husband, to be removed from the property. The plaintiff's attorney stated that evidence of personal property was relevant because the plaintiff was requesting an order to restrain the defendants' removal of these items. The court overruled the objection and stated "you can argue in your brief why it shouldn't be relevant to these proceedings." Without objection, the plaintiff's counsel submitted into evidence a list of equipment the plaintiff did not want removed from the property. When Steven Pollansky testified on direct examination regarding his maintenance and financial contributions of specific items on the list, the plaintiff's counsel objected. The court stated that the plaintiff brought a summary process action and "I don't know why we're spending all our time on this because I'm not going to decide in this case who gets that property. I'm only going to decide who gets to stay and who's going. . . . I didn't know what it was when I heard it the first time. Does anyone disagree that I'm not going to decide who gets the property in the lawsuit?" Counsel for both parties stated that they did not disagree.

In permitting the plaintiff to admit evidence of personal property and instructing defendants' counsel to include arguments regarding the relevancy of this evidence in the defendants' brief, the court, in essence, was deferring its ruling on the relevancy of such evidence. The court later indicated that it deemed such evidence irrelevant and stated that it would not decide

the issue of ownership of such personal property and both parties agreed. The court, then, did not expressly rule on the plaintiff's request. The court did not abuse its discretion in its actions. The defendants were not treated "differently" or "unfairly" as they claim—the court ruled that it would not consider ownership of personal property as to either party.

B

The defendants next seem to argue that the following finding made by the court was clearly erroneous: after the death of the plaintiff's husband "and without the plaintiff's permission, the defendants changed the locks on the property and the plaintiff had difficulty entering her property." The defendants highlight Steven Pollansky's testimony that the locks on the gate to the property were changed while Andrew Pollansky was alive. The defendants state in their brief that the lock issue "may very well be irrelevant to a summary process action."

This finding was not clearly erroneous. See *Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 370, 18 A.3d 604 (findings of fact reviewed under clearly erroneous standard), cert. denied, 301 Conn. 936, 23 A.3d 729 (2011). The court was free to discredit Steven Pollansky's testimony and credit the plaintiff's testimony that a new lock had been put on the gate after her husband passed away. *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002) (trier of fact sole arbiter of credibility). That notwithstanding, as the defendants aptly point out, the court's finding regarding the lock was not relevant to its judgment. Accordingly, the propriety of the court's finding in that regard is immaterial.

C

On cross-examination of Steven Pollansky, the court permitted plaintiff's counsel, over an objection by

defendants' counsel, to introduce into evidence a partial transcript of Andrew Pollansky's 1995 deposition in a separate case. The court stated, "I see it as a question on cross-examination, not necessarily offered for the truth but to impact the credibility of [Steven Pollansky] who's testified that [Andrew Pollansky] always said he was giving him the property . . . ." Steven Pollansky testified that the deposition stated that Andrew Pollansky did not know to whom he was planning to leave the property.

The defendants argue that they were prejudiced by the court's admission of a partial deposition transcript "without the benefit of being able to cross-examine on other points in the transcript. . . . Steven could not answer questions without the full transcript. In the court's decision the testimony of Steven is discredited on this basis." (Citation omitted.)

The court found that the defendants failed to prove their special defense that they had an ownership interest in the property granted to Steven Pollansky by Andrew Pollansky. The court noted that the defendants did not produce at trial any written documents, including testamentary documents, deeds or contracts granting Steven Pollansky or any of the defendants an interest in the property. The court stated that the written documents introduced at trial reflected that as co-owner of the property, upon the death of Andrew Pollansky, the property would be the plaintiff's, absent any countervailing agreement or gift. The court stated that regardless of whether oral statements could be sufficient to create an ownership interest in the property, it did not find credible Steven Pollansky's testimony that his father orally promised to leave the property to him. The court credited the plaintiff's testimony that she was not aware her husband made any such promises; the court further noted that as co-owner of the

property, the plaintiff's interest in the property could not be given away without her consent.

The court did not abuse its discretion in admitting the partial deposition transcript for impeachment purposes. See Conn. Code Evid. § 8-8 ("[w]hen hearsay has been admitted in evidence, the credibility of the declarant may be impeached, and if impeached may be supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness"). If the defendants wished to have the full deposition transcript admitted into evidence, they could have done so.[9]

D

Over the defendants' objection, the court permitted the plaintiff to introduce testimony of an expert appraiser. The court, *Cobb, J.*, permitted the plaintiff's expert to testify based on the plaintiff's representation that the court, *Mullarkey, J.*, verbally ordered the plaintiff to present an expert appraisal in connection with a motion for use and occupancy payments. The court, *Cobb, J.*, at trial, reasoned that the defendants had notice of the witness because of Judge Mullarkey's order and further stated that it would give the defendants time to bring in their own appraiser, if they wished to do so. The plaintiff introduced at trial the expert's report on the value of the property and elicited testimony from the expert regarding the fair market rental value of the property. The defendants argue that the court erred in admitting the expert testimony because the plaintiff did not provide notice of her expert under Practice Book § 13-4 and because the testimony was prejudicial. The defendants argue that regardless of Judge Mullarkey's prior order and regardless of the fact

---

[9] During redirect examination of Steven Pollansky, the defendants' counsel did not attempt to enter into evidence the full deposition transcript.

that the hearing on use and occupancy did not occur, the testimony nonetheless was prejudicial.

Because the court did not decide the issue of use and occupancy payments, any testimony regarding the value of the land was immaterial and, accordingly, did not harm the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

