******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STEVEN POLLANSKY *v.* ANNA POLLANSKY ET AL.
(AC 36954)

Beach, Prescott and Bear, Js.

*Argued September 25, 2015—officially released January 26, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Wahla, J.)

*Robert F. Cohen*, with whom, on the brief, was *Forest
E. Green*, for the appellant (plaintiff).

*Wayne C. Gerlt*, for the appellees (defendants).

*Opinion*

BEAR, J. This appeal is the latest skirmish in the ongoing dispute between the plaintiff, Steven Pollansky, and his mother, the defendant Anna Pollansky,[1] concerning the plaintiff's claim of entitlement to real property allegedly promised to him by his father, Andrew Pollansky, many years ago. Anna Pollansky previously had initiated a summary process action against the plaintiff and his family seeking immediate possession of three parcels of property located in Coventry, which they occupied. The plaintiff's primary claim in the summary process action, raised by way of special defense, was that he occupied the Coventry property pursuant to an ownership interest that was orally promised to him by Andrew Pollansky. After a trial, the court in the summary process action rendered judgment in favor of Anna Pollansky, and this court affirmed that judgment. See *Pollansky* v. *Pollansky*, 144 Conn. App. 188, 71 A.3d 1267 (2013).

The plaintiff subsequently instituted the present action against the defendants. In a four count complaint alleging breach of contract, unjust enrichment, quantum meruit, and adverse possession, the plaintiff claimed an ownership interest in the Coventry property, an ownership interest in his father's investment property in Mansfield, and money damages. The trial court rendered summary judgment in favor of the defendants, ruling that the doctrines of res judicata and collateral estoppel precluded all of the causes of action and issues raised by the plaintiff in the present case. On appeal, the plaintiff asserts that the court improperly rendered summary judgment because (1) his breach of contract claim alleging his ownership interest was not litigated in the summary process action, thereby precluding application of the doctrine of res judicata; and (2) many of the issues raised in his remaining counts for unjust enrichment, quantum meruit, and adverse possession were not fully and fairly litigated in the summary process action, thereby precluding application of the doctrine of collateral estoppel. We reverse the judgment of the trial court in favor of the defendants on the plaintiff's counts of unjust enrichment and quantum meruit. We affirm the judgment in all other respects.

Many of the relevant facts and procedural history were set forth by this court in *Pollansky* v. *Pollansky*, supra, 144 Conn. App. 188. "In the 1960s, [Anna Pollansky] and her late husband, Andrew Pollansky, jointly purchased three adjoining parcels of land in Coventry, totaling 84.5 acres . . . . Andrew Pollansky operated a sand and gravel business on the [Coventry] property until he retired in approximately 1992. The [plaintiff], the son of Andrew Pollansky and [Anna Pollansky], worked in his father's gravel business on the [Coventry] property from his teenage years until his father retired. After Andrew Pollansky retired, he and [Anna Pollan-

sky] permitted the [plaintiff and his family] to access the [Coventry] property for recreational purposes and, as to the [plaintiff and his wife], for operation of their businesses . . . . [Anna Pollansky] and Andrew Pollansky gave the [plaintiff] permission to operate [his] businesses on the [Coventry] property, but there were no written agreements or leases to that effect. . . .

"When Andrew Pollansky died in July, 2010, [Anna Pollansky] became the sole owner of the [Coventry] property. [Anna Pollansky], who was in her eighties at the time of [the summary process] trial, wished to sell or to rent the property to subsidize her income. [Anna Pollansky] asked the [plaintiff] to pay rent for the use of the [Coventry] property for [his] businesses, but the parties had not been able to come to any agreement on rent. As a result, [Anna Pollansky] asked the [plaintiff] to vacate the [Coventry] property so that she could sell or rent it to obtain additional income, but the [plaintiff] refused to do so.

"[Anna Pollansky] brought a summary process action against the [plaintiff] seeking immediate possession of the [Coventry] property. [Anna Pollansky] claimed that, although the [plaintiff] once had the right and privilege to occupy the [Coventry] property, that right or privilege had terminated. The [plaintiff] alleged [the following as a special defense]: that Andrew Pollansky had granted [the plaintiff] an ownership interest in the [Coventry] property . . . .

"The court found that [Anna Pollansky] proved her summary process action: that she was the owner of the [Coventry] property, that she continued to permit the [plaintiff] to operate a business on the [Coventry] property after her husband's death, that she terminated her permission when she asked the [plaintiff] to vacate the premises and served [him] with a valid notice to quit, and that the [plaintiff] remained in possession. The court found that the [plaintiff] had not proven [his] special [defense]. The court entered a judgment of immediate possession in favor of [Anna Pollansky]." Id., 189–91. This court affirmed the trial court's judgment in the summary process action. See id., 189.

The following additional facts are relevant to our consideration of the issues raised in this appeal. The trial in the summary process action took place on January 6, 2012, and January 27, 2012. In his special defense in the summary process action, the plaintiff alleged that he occupied the Coventry property "pursuant to an ownership interest in the premises granted by Andrew Pollansky." In support of this special defense, the plaintiff testified that Andrew Pollansky promised to convey the Coventry property to him in exchange for services and improvements to the Coventry property. The plaintiff testified as to a variety of services he had performed over the years, including land clearing, grading, drainage, and business management services. He also testi-

fied that he had assisted his parents in a number of legal proceedings related to the Coventry property, including a tax foreclosure, a zoning application, and litigation with an abutting landowner. The plaintiff testified that Andrew Pollansky indicated to him on a number of occasions throughout his life that he would not have been able to keep the property if not for the plaintiff's efforts. The plaintiff's wife, Darby Pollansky, was called as a witness as well. Darby Pollansky testified, among other things, that Andrew Pollansky promised the Coventry property to the plaintiff on many occasions. Finally, the plaintiff testified at length as to his services on the Mansfield property. Specifically, he testified that the house regularly had been damaged by tenants, and that he had repaired the walls, painted, and performed carpentry services. The plaintiff claimed that he was never paid for any of his services. Anna Pollansky testified that, to her knowledge, Andrew Pollansky never promised the Coventry property to the plaintiff, but she admitted that the plaintiff worked on the Coventry property for thirty-six years. Additionally, she testified that she had paid the plaintiff whenever he did work at the Mansfield property.

The court, *Cobb*, *J.*, found the following facts in the summary process action. The plaintiff worked with Andrew Pollansky on the Coventry property from his teenage years until his father retired in 1992. The plaintiff, however, did not produce any written documents, including letters, deeds, contracts, or testamentary documents promising or granting the plaintiff an interest in the Coventry property. The only evidence adduced by the plaintiff concerning his father's promise to convey the Coventry property was his and Darby Pollansky's self-serving and hearsay testimony, which the court did not credit. Conversely, the court credited Anna Pollansky's testimony. Accordingly, it held that the plaintiff's father never promised to convey an ownership interest to the plaintiff, and it rendered judgment of immediate possession in favor of Anna Pollansky. The court did not make any findings or rulings concerning the Mansfield property.

The plaintiff subsequently commenced the present action against the defendants.[2] In the breach of contract count of the complaint, the plaintiff made the following allegations. The plaintiff worked continuously and without compensation for decades at Andrew Pollansky's business on the Coventry property. The plaintiff also worked without compensation for decades at the Mansfield property. The plaintiff performed services at and made improvements to both of these properties pursuant to an oral agreement with Andrew Pollansky, whereby in consideration of his performance of these services, his father would convey the properties to the plaintiff. Notwithstanding the plaintiff's many years of performance, the defendants failed to convey the properties to him. The unjust enrichment count of the com-

plaint incorporated many of the allegations in the breach of contract count and contained an additional allegation that the defendants, as Andrew Pollansky's heirs, were unjustly enriched by the plaintiff's uncompensated services for the benefit of and his improvements to the properties. The quantum meruit count incorporated many of the allegations of the prior counts and contained an additional allegation that the plaintiff was entitled to the reasonable value of his services. In the adverse possession count, the plaintiff alleged that he had obtained title to the Coventry and Mansfield properties by virtue of his "open, visible, notorious, adverse, exclusive, continuous, [and] uninterrupted" use of these properties for more than fifteen years. The defendants thereafter filed special defenses to the breach of contract, unjust enrichment, and quantum meruit counts of the plaintiff's complaint, alleging, inter alia, that the doctrines of res judicata and collateral estoppel barred the plaintiff's claims.[3]

In December, 2013, the defendants filed a motion for summary judgment, asserting, inter alia, that the doctrines of res judicata and collateral estoppel barred all of the plaintiff's claims. Specifically, and with respect to the breach of contract count, the defendants asserted that the plaintiff raised and litigated in the summary process action the claim of his contractual right to an ownership interest in the Coventry property. Consequently, the defendants asserted that the plaintiff was foreclosed from raising his alleged ownership interest in the present case. The defendants also asserted that the plaintiff's claims for adverse possession, unjust enrichment, and quantum meruit could have been raised during the summary process action but were not, which precluded him from raising them in the present case. In his memorandum of law in opposition to the defendants' motion for summary judgment, the plaintiff claimed that neither res judicata nor collateral estoppel applied because the issues and claims in the two cases were not identical. Specifically, the plaintiff argued that (1) the inquiry in the summary process action was limited to who was entitled to possession, whereas in the present case the plaintiff alleged legal and equitable claims for title, and he sought damages representing the value of his services for and improvements to the Coventry property; (2) the money damages that the plaintiff sought in the present case were not available to the plaintiff in the summary process action, so they could not be adjudicated in that action; and (3) the burdens of proof differ in civil actions and summary process actions.

The court, *Wahla, J.*, on May 27, 2015, granted the defendants' motion for summary judgment. It concluded that the plaintiff's breach of contract claim was precluded by the doctrine of res judicata, reasoning that the summary process court had rendered a final judgment on the merits on the same cause of action

and between the same parties in the summary process action. The court, *Wahla, J.*, also concluded that the unjust enrichment, quantum meruit, and adverse possession counts were barred by the doctrine of collateral estoppel. Specifically, the court held that the plaintiff's allegations of services provided for and improvements to the Coventry and Mansfield properties were actually litigated in the summary process action. Further, the court held that the plaintiff could have raised his adverse possession claim in the summary process action, and that the plaintiff could have raised unjust enrichment and quantum meruit as equitable defenses in that action. On these bases, the court ruled that all of the plaintiff's claims relating to both the Coventry property and the Mansfield property were precluded.[4] This appeal followed.

We begin with the applicable standard of review and legal principles. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . In addition, the applicability of res judicata or collateral estoppel presents a question of law over which we employ plenary review." (Citation omitted; internal quotation marks omitted.) *Bruno* v. *Geller*, 136 Conn. App. 707, 720, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit. . . .

"Both doctrines protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation . . . and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"Res judicata, or claim preclusion, is [however] distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action . . . between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party

from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Internal quotation marks omitted.) *Rocco* v. *Garrison*, 268 Conn. 541, 554–55, 848 A.2d 352 (2004).

## I

## BREACH OF CONTRACT

The plaintiff first claims that the court improperly held that res judicata barred his breach of contract cause of action against the defendants. Specifically, the plaintiff claims that res judicata does not preclude his claim of an ownership interest in the Coventry property because the court declined to rule on this issue during the summary process action. The plaintiff also claims that this case does not involve the same parties and privies as the summary process action. We conclude that the court properly rendered summary judgment in favor of Anna Pollansky on the ground of res judicata. We also conclude that the court properly rendered summary judgment in favor of Joyce Chimbole and Judy Richard, although we hold that collateral estoppel, and not res judicata, precludes the plaintiff's breach of contract claim against them.

The plaintiff claims that his breach of contract claim cannot be precluded because the court explicitly declined to determine his ownership claim in the summary process action. The plaintiff cites to the following colloquy between the court and the parties' counsel during the summary process trial:

"The Court: . . . Does anyone disagree that I'm not going to decide who gets the property in this lawsuit? Do you disagree with me, Mr. [Wayne C.] Gerlt?

"[The Defendants' Counsel]: I do not disagree with you.

"The Court: Do you disagree with me, Mr. [Robert F.] Cohen?

"[The Plaintiff's Counsel]: I don't, Your Honor."

The plaintiff claims that on the basis of this exchange, the court did not rule on his claimed ownership interest in the Coventry property—which is at the heart of his causes of action in the present case—and that res judicata does not apply. We reject this claim because this colloquy, when read in context, related to the ownership of personalty, not the realty at issue in the present case.

The transcript of the summary process trial reflects that during the plaintiff's direct examination in his case-in-chief, evidence was adduced concerning his contributions to the acquisition and maintenance of equipment used as part of Andrew Pollansky's business at the Coventry property. Eventually, Anna Pollansky's counsel objected. The following colloquy ensued between the court and the plaintiff's counsel:

"The Court: Okay. My question is: With respect *to the equipment*, this is a summary process action. The question is, you know, do they get to stay or do they have to go. What do the specifics of the property have to do with it? I'm not deciding that, who gets what in this case.

"[The Plaintiff's Counsel]: Your Honor, I'm only responding to what was done on direct examination.

"The Court: I know, that's fine, but I'm telling—I don't know why we're spending all our time on this because *I'm not going to decide in this case who gets that property. I'm only going to decide who gets to stay and who's going.* So, I just don't know what the point of all this is. I didn't know what it was when I heard it the first time. Does anyone disagree that I'm not going to decide who gets the property in this lawsuit? Do you disagree with me, Mr. Gerlt?

"[The Defendants' Counsel]: I do not disagree with you.

"The Court: Do you disagree with me, Mr. Cohen?

"[The Plaintiff's Counsel]: I don't, Your Honor." (Emphasis added.)

On the basis of the foregoing, the court clearly declined to determine in the summary process action the ownership of *personal property* located on the Coventry property. In response to a series of questions posed during oral argument to this court, the plaintiff's counsel conceded that (1) the summary process court's statements pertained only to personal property and (2) he was unable to locate in the record any statement from the court refusing to decide ownership of the real property. After conducting our own thorough review of the record, we are unable to find any evidence that the court refused to rule on the plaintiff's ownership claims to the Coventry property. Indeed, the court ruled that the plaintiff lacked an ownership interest when it found that the plaintiff had failed to prove the allegations of his special defense. Accordingly, we reject the plaintiff's contention that the court refused to determine the plaintiff's alleged ownership interest.

We conclude that res judicata bars the plaintiff's breach of contract claims against Anna Pollansky. "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or *which might have been made*." (Emphasis in original; internal quotation marks

omitted.) *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 842, 988 A.2d 229 (2010).

In the breach of contract count of the complaint, the plaintiff alleged that he entered into an oral agreement with his father by which his father would convey real property to him in consideration of his performance of services at and improvements to those properties. This claim also was raised by the plaintiff in the prior summary process action by way of his special defense. In support of this claim, at the summary process trial, the plaintiff testified about the services he performed and the improvements he made to the properties, and about his father's oral promise to convey the real property to him. The summary process court explicitly rejected this claim in its memorandum of decision, noting that it did not credit any of the plaintiff's testimony. In light of this evidence and the principles of res judicata, we hold that the court in the present case properly rendered summary judgment in favor of Anna Pollansky on the ground of res judicata.

We also conclude that the court in the present case properly rendered summary judgment in favor of Chimbole and Richard, albeit on different grounds. Although the court disposed of the plaintiff's contract claims against Chimbole and Richard under the doctrine of res judicata,[5] we conclude that these claims are precluded by the doctrine of collateral estoppel. "The doctrines of collateral estoppel and res judicata are close cousins, but they are not alternate expressions of the same [principle]." *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, 88 Conn. App. 661, 671, 870 A.2d 1116, cert. denied, 274 Conn. 907, 908, 876 A.2d 1200 (2005). "Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) Id. "[C]ollateral estoppel precludes a party from relitigating issues and facts *actually* and *necessarily* determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. . . . For collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Joyner*, 255 Conn. 477, 489–90, 774 A.2d 927 (2001).

In the breach of contract count of the complaint, the plaintiff alleged that (1) his father orally promised to

convey the Coventry property to him in exchange for his services, (2) he worked continuously and without compensation for decades on the Coventry property, and (3) the Coventry property had not been conveyed to him. These precise issues were actually litigated in the summary process action. "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) *New England Estates, LLC* v. *Branford*, supra, 294 Conn. 839. The plaintiff raised the issue of his ownership interest in his special defense in the summary process action, alleging that he occupied the Coventry property "pursuant to an ownership interest in the premises granted by Andrew Pollansky." The issue was submitted to the summary process court for determination: immediately before the plaintiff called his first witness at the summary process trial, the court read his special defense on the record and asked, "[s]o, that's the special defense that you're relying on. Right?" The plaintiff's counsel responded in the affirmative. During both his direct and cross-examinations, the plaintiff testified about his father's promise to convey the Coventry property to him. The plaintiff's wife corroborated this testimony during her direct examination. After considering all of the evidence, the summary process court rejected the plaintiff's claim to an ownership interest in the Coventry property.

Furthermore, the court's ruling denying the plaintiff's claim of ownership of the Coventry property was necessary to its judgment. "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Emphasis omitted; internal quotation marks omitted.) *Carol Management Corp.* v. *Board of Tax Review*, 228 Conn. 23, 32–33, 633 A.2d 1368 (1993). If the plaintiff had an ownership interest sufficient to avoid the entry of a summary process judgment against him, he could not have been evicted from the Coventry property. The court found that the plaintiff lacked such an ownership interest in the Coventry property, explaining that the plaintiff "did not provide any written documents, including, letters, testamentary documents, deeds, [or] contracts . . . ."[6] Indeed, the court did not credit the evidence proffered by the plaintiff that Andrew Pollansky on several occasions orally promised to convey the Coventry property to the plaintiff.[7]

The plaintiff argues on appeal that his contract claim is not precluded against Chimbole and Richard because they were not parties to the summary process action. We disagree. Mutuality of parties is not a bar to the application of collateral estoppel in Connecticut. See *Torres* v. *Waterbury*, 249 Conn. 110, 135–36, 733 A.2d 817 (1999) ("The mutuality requirement has . . . been widely abandoned as an ironclad rule. . . . We have held that the [mutuality] rule will no longer operate

automatically to bar the use of collateral estoppel . . . ." [Citations omitted; internal quotation marks omitted.]); *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 302, 596 A.2d 414 (1991) ("To allow a party who has fully and fairly litigated an issue at a prior trial to avoid the force of a ruling against him simply because he later finds himself faced by a different opponent is inappropriate and unnecessary. First, the mutuality of parties rule systematically diminishes the stability of judgments. . . . The rule allows a single party to present antithetic claims on identical issues in separate actions and to obtain favorable decisions in both solely because his opponent has changed. Additionally, increasingly important notions of judicial economy are served by the abandonment of the doctrine of mutuality. . . . In light of the scarcity of judicial time and resources, the repeated litigation of issues that have already been conclusively resolved by a court carries a considerable price tag in both money and time. Finally, we perceive no sound reason . . . to adhere to the doctrine of mutuality." [Citations omitted.]). To permit the plaintiff to raise against new parties the issue of his ownership interest in the Coventry property—which was conclusively determined after a full trial on the merits—would result in unnecessary and duplicative litigation, and would undermine the important principles of finality and judicial economy identified by our Supreme Court.

The issues and claims relating to whether the plaintiff acquired title to the Coventry property pursuant to an oral agreement with his father were fully and fairly litigated, and actually and necessarily decided, in the summary process action. Consequently, we conclude that the court properly gave preclusive force to the judgment in the summary process action, insofar as it was a bar to the breach of contract count in this action.

## II

### REMAINING COUNTS

The plaintiff next claims that the court improperly rendered summary judgment on the remaining counts of his complaint. He contends that the court improperly held that collateral estoppel bars his claims for adverse possession, unjust enrichment, and quantum meruit because none of these claims were pleaded during the summary process action, none of these claims were necessary to support the court's decision, and the expeditious nature of summary process proceedings prevented a full and fair opportunity to explore these claims. We address each count in turn.

### A

#### Adverse Possession

"[O]ne claiming title by adverse possession always claims in derogation of the right of the true owner, admitting that the legal title is in another. The adverse

claimant rests the claim, not on title, but on holding adversely to the true owner for the term prescribed by the statute of limitations." (Internal quotation marks omitted.) *Caminis* v. *Troy*, 300 Conn. 297, 309, 12 A.3d 984 (2011). "It is well established that one claiming title to real property by adverse possession must prove by clear and positive evidence each element of actual, open, notorious, hostile, continuous and exclusive possession for the full fifteen year statutory period." *Mulle* v. *McCauley*, 102 Conn. App. 803, 809, 927 A.2d 921, cert. denied, 284 Conn. 907, 931 A.2d 265 (2007).

The court, *Wahla, J.*, concluded that collateral estoppel barred the plaintiff's adverse possession claim against the defendants. This conclusion was supported by two salient points. First, the court noted that the plaintiff conceded in the summary process action that he had occupied the Coventry property pursuant to permission granted by Andrew Pollansky, thereby defeating the hostility element of adverse possession. Second, the court held that the plaintiff could have raised prescriptive claims in the summary process action because counterclaims for adverse possession are permitted in eviction proceedings. We agree with the court that collateral estoppel precludes the plaintiff's adverse possession claims.

In order for the plaintiff to gain title by adverse possession, he would have to prove that his use of the Coventry property was, among other things, hostile. In other words, the plaintiff would have to prove that he occupied the Coventry property without the permission of Anna Pollansky and Andrew Pollansky, the joint owners of each of the parcels, for a continuous fifteen year period. Id., 813–14 ("to satisfy the hostility requirement of adverse possession, a claimant's possession of the disputed land, *from its inception*, must be *without permission*, license or consent of the owner and must continue to be so *throughout the required fifteen year period*" [emphasis added; footnotes omitted]). The issue of whether the plaintiff had permission to occupy the Coventry property was addressed and resolved during the summary process action. After the trial, the summary process court explicitly found that Anna Pollansky and Andrew Pollansky "permitted [the plaintiff] access to the property for recreational purposes and to operate [his] business." Additionally, the court found that "after her husband's death, [Anna Pollansky] continued to permit the defendants to operate a business on the property" but that Anna Pollansky had "terminated her permission when she asked the[m] to vacate the premises . . . ." Thus, the court determined that the plaintiff and his family had permission to occupy the Coventry property until 2011, when that permission was revoked. The plaintiff never challenged these factual findings in his appeal from the court's judgment. See *Pollansky* v. *Pollansky*, supra, 144 Conn. App. 188. Accordingly, the plaintiff's use of the Coventry property

could not have been hostile for the necessary fifteen year period. Because the issue of whether the plaintiff's occupation of the Coventry property was hostile was resolved in the summary process action after a trial, he is precluded from raising it in the present case.[8]

## B

### Unjust Enrichment and Quantum Meruit[9]

The plaintiff next claims that the court improperly granted the defendants' motion for summary judgment with respect to his counts for unjust enrichment and quantum meruit. Specifically, the plaintiff argues that these claims could not have been actually decided in the summary process action because claims for money damages are not permitted in those proceedings. In the same vein, the plaintiff notes that the court explicitly declined to decide whether to award damages for improvements made to the properties. The defendants object, arguing that the plaintiff's claims are precluded because the issues of unjust enrichment and quantum meruit were actually litigated in the summary process action and actually decided in favor of Anna Pollansky. The defendants contend that the plaintiff offered considerable evidence concerning his services for the benefit of the properties, that the court found in favor of Anna Pollansky on these issues, and, therefore that he cannot recover money damages in a subsequent action on the same claims or facts. We agree with the plaintiff.

We begin by setting forth relevant legal principles. "Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract." (Internal quotation marks omitted.) *Stratford* v. *Wilson*, 151 Conn. App. 39, 49, 94 A.3d 644, cert. denied, 314 Conn. 911, 100 A.3d 403 (2014). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006). "Quantum meruit is a theory of contract recovery that does not depend upon the existence of a contract, either express or implied in fact. . . . Rather, quantum meruit arises out of the need to avoid unjust enrichment to a party, even in the absence of an actual agreement. . . . Centered on the prevention of injustice, quantum meruit strikes the appropriate balance by evaluating the equities and guaranteeing that the party who has rendered services receives a reasonable sum for those services." (Citations omitted; internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001).

Summary process proceedings are limited to a determination of who is entitled to possession of real property. See *Young* v. *Young*, 249 Conn. 482, 487–88, 733

A.2d 835 (1999); *Carnese* v. *Middleton*, 27 Conn. App. 530, 535, 608 A.2d 700 (1992); General Statutes § 47a-23 (a). The plaintiff is correct that counterclaims for money damages are not permitted in summary process proceedings. See *Fellows* v. *Martin*, 217 Conn. 57, 70, 584 A.2d 458 (1991) (affirming dismissal of counterclaim claiming money damages in summary process case because prayers for monetary relief do not implicate right to possession); *Webb* v. *Ambler*, 125 Conn. 543, 551–52, 7 A.2d 228 (1939) (holding counterclaim for money damages for partial eviction inappropriate in eviction action). Because counterclaims and defenses seeking money damages are not permitted in summary process actions, the plaintiff's claims in the present case are not subject to preclusion.

This court's opinion in *Carnese* v. *Middleton*, supra, 27 Conn. App. 530, is instructive to our analysis. The plaintiff landlord in *Carnese* brought three summary process actions against the defendants—two of which were withdrawn, and the third of which was resolved in favor of the defendants. Subsequently, the plaintiff brought an action for rent, interest, and costs of collection pursuant to a lease with the defendants. During trial in that action, the defendants orally moved to dismiss on res judicata grounds, which was granted by the trial court. Id., 534. On appeal, this court held that res judicata did not bar the plaintiff's claims for money damages, reasoning: "A summary process action is designed solely to decide the simple question of who is entitled to possession. . . . A claim for damages is not properly raised in a summary process action. . . . A summary process action, therefore, can have no res judicata effect in a subsequent action for damages between the same parties." (Citations omitted; internal quotation marks omitted.) Id., 535. On the basis of this authority, we conclude that the court improperly held that res judicata barred the plaintiff's remaining claims for unjust enrichment and quantum meruit.

Collateral estoppel also does not preclude the plaintiff's claims. "Whenever collateral estoppel is asserted . . . the court must make certain that there was a full and fair opportunity to litigate. The requirement of full and fair litigation ensures fairness, which is a crowning consideration in collateral estoppel cases. . . . [I]f the nature of the hearing carries procedural limitations that would not be present at a later hearing, the party might not have a full and fair opportunity to litigate." (Internal quotation marks omitted.) *Gateway, Kelso & Co.* v. *West Hartford No. 1, LLC*, 126 Conn. App. 578, 584, 15 A.3d 635, cert. denied, 300 Conn. 929, 16 A.3d 703 (2011). The limited nature of the summary process action necessarily precluded the court from adjudicating the plaintiff's entitlement to noncontractual money damages. See id.; 1 Restatement (Second), Judgments § 28, comment (j), p. 284 (1982) ("the court in the second proceeding may conclude that issue preclusion should not apply

because the party sought to be bound did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the first proceeding"). Although the court in the summary process action found that the plaintiff performed services relating to the Coventry property for many years, its finding was not essential to its ultimate denial of the plaintiff's ownership special defense.[10] See *Rocco* v. *Garrison*, 268 Conn. 541, 555, 848 A.2d 352 (2004) ("[t]o assert successfully the doctrine of issue preclusion . . . a party must establish that the issue sought to be foreclosed . . . was essential to the decision in the prior case" [internal quotation marks omitted]). The plaintiff's entitlement to money damages under the theories of unjust enrichment and quantum meruit also was not actually determined by the court. "Collateral estoppel can be applied only to bar relitigation of facts that were formally put in issue *and ultimately determined* by a valid, final judgment. . . . To conclude otherwise would improperly infringe on a party's right to seek a judicial determination of disputed issues of fact." (Citation omitted; emphasis added.) *Carnese* v. *Middleton*, supra, 27 Conn. App. 542. Although the plaintiff submitted evidence concerning his provision of services to the Coventry property, the court in its determination of the issue of possession did not have to reach the quantum meruit and unjust enrichment issues of benefit to the defendants, lack of payment, and detriment to the plaintiff. See *Vertex, Inc.* v. *Waterbury*, supra, 278 Conn. 573. We thus conclude that neither res judicata nor collateral estoppel bar the plaintiff's unjust enrichment and quantum meruit counts.

The judgment is reversed only with respect to the unjust enrichment and quantum meruit counts of the plaintiff's complaint as to the Coventry property and the case is remanded for further proceedings on those counts.[11] The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Anna Pollansky appears both individually and as administrator of the estate of her deceased husband, Andrew Pollansky. All references to Anna Pollansky are to her in both capacities. The plaintiff's sisters, Joyce Chimbole and Judy Richard, also are parties to this appeal. We refer to Anna Pollansky, Chimbole, and Richard collectively as the defendants.

[2] Chimbole and Richard—the plaintiff's sisters—were not parties to the summary process action.

[3] The defendants asserted their special defenses only against the breach of contract, unjust enrichment, and quantum meruit counts of the complaint. The defendants did not assert them against the adverse possession count as required by our rules of practice. See *Red Buff Rita, Inc.* v. *Moutinho*, 151 Conn. App. 549, 558, 96 A.3d 581 (2014) ("[c]ollateral estoppel, like res judicata, must be specifically pleaded by a defendant as an affirmative defense" [internal quotation marks omitted]); see also Practice Book § 10-51 ("[w]here several matters of defense are pleaded, each must refer to the cause of action which it is intended to answer, and be separately stated and designated as a special defense"). Because the plaintiff failed to challenge this procedural irregularity, however, it is deemed waived. See *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 234, 4 A.3d 851 (2010) ("[t]he defendants' failure to file a special defense may be treated as waived where the plaintiff fails to make appropriate objection to the evidence and argument offered in support of that defense"). Therefore, we also will

consider the application of the defendants' special defenses to the adverse possession count, as did the trial court.

[4] We note that the plaintiff has made claims to both the Coventry property *and* the Mansfield property in his complaint. He alleged in count one, for example, that Andrew Pollansky promised to convey both properties to him. He also alleged in count four that he used and possessed both properties exclusively, openly, visibly, notoriously, and continuously for fifteen years, thereby acquiring title to both properties by adverse possession. Although the court in the summary process action did not make any findings or rulings with respect to the Mansfield property, the court in the present action rendered summary judgment against the plaintiff on all of his claims, including those for ownership of the Mansfield property.

With the exception of a cursory reference on page four of his brief, however, the plaintiff has neither raised nor briefed whether his claims to the Mansfield property properly were precluded by res judicata or collateral estoppel. "We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 124, 956 A.2d 1145 (2008). Therefore, we deem any claim to the Mansfield property to be abandoned. See *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 279–80, 25 A.3d 632 (2011) (holding claims are inadequately briefed when parties do not develop claims with analysis); see also *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) ("[c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion").

[5] The court noted that Chimbole and Richard were not parties to the summary process action, nor were they in privity with Anna Pollansky for purposes of that action, but, nevertheless, it determined that res judicata precluded the plaintiff's breach of contract claim against them. The trial court cited to this court's opinion in *Bruno* v. *Geller*, supra, 136 Conn. App. 707, in support of the conclusion that strict mutuality of the parties was not required for Chimbole and Richard to invoke res judicata against the plaintiff defensively.

The plaintiff in *Bruno* brought claims of civil conspiracy against her former husband and several alleged coconspirators in a number of actions. First, she claimed in her dissolution action that her former husband and his former employer conspired to deprive her of a fair and equitable property division. The dissolution court rejected this claim. Id., 710–11. Second, the plaintiff brought an action in New York against her former husband, his former employer, a company owning a majority interest in his former employer, and a law firm, raising the same allegations of civil conspiracy. The New York Supreme Court held that collateral estoppel barred the plaintiff's claims. Id., 712. Finally, the plaintiff commenced a third action in Superior Court raising the same allegations. The trial court rendered summary judgment in favor of the defendants, giving preclusive effect to the New York judgment. Id., 712–13. On appeal, the plaintiff argued that res judicata was inapplicable because strict mutuality of parties was lacking. Id., 727.

This court agreed that strict mutuality of parties was lacking, but held that, under the circumstances of that case, it was not required: "[A]ssuming the identity of the issues, a plaintiff who deliberately selects his forum and there unsuccessfully presents his proofs is bound by such adverse judgment in a second suit involving all the identity issues already decided . . . . [T]o hold otherwise would be to allow repeated litigation of identical questions expressly adjudicated, and to allow a litigant who has lost on a question of fact to reopen and retry all the old issues each time he can obtain a new adversary not in privity with his former one." (Internal quotation marks omitted.) Id., 728, quoting annot., 31 A.L.R.3d 1044, 1068 (1970).

The present case is readily distinguishable from *Bruno*. In *Bruno*, we noted that the plaintiff had purposely "chose[n] her first forum, the dissolution court, to raise and pursue her claims of fraud against [her former husband]. The court rejected her claims of fraud. Thereafter, she chose her second forum, the New York Supreme Court, added defendants in addition to [her former husband] and raised claims of fraud that were based on the same facts that had been alleged and found unsubstantiated by the dissolution court." *Bruno* v. *Geller*, supra, 136 Conn. App. 729. In contrast, the plaintiff in the present case did not choose the summary process action as a forum to bring claims against Chimbole and Richard: he was a defendant

in that action with respect to Anna Pollansky's claims against him and his family for possession of the Coventry property. Therefore, the exception to mutuality articulated in *Bruno* is inapplicable in the present case. As we will discuss, however, mutuality is not a bar to the application of collateral estoppel.

[6] General Statutes § 52-550, the statute of frauds, provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ."

[7] It is undisputed that at the times of Andrew Pollansky's alleged promises to convey the Coventry property to the plaintiff, Andrew Pollansky and Anna Pollansky were joint tenants with a right of survivorship to the property. The record, however, does not contain any claim by the plaintiff that Andrew Pollansky had promised to convey to him Anna Pollansky's undivided one-half interest in the Coventry property, nor does the record contain any claim by the plaintiff that Anna Pollansky separately had promised to convey her undivided one-half interest to him. Because the defendants did not assert any claim concerning the impact of the joint tenancy on the plaintiff's claims, we do not address it in this opinion.

[8] We note that res judicata also bars the plaintiff's adverse possession claim against Anna Pollansky. "[A] judgment is final not only as to every matter which was offered to sustain the claim, *but also as to any other admissible matter which might have been offered for that purpose.* . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Emphasis in original; internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 463, 998 A.2d 766 (2010). As the court correctly concluded, the plaintiff could have raised this claim against Anna Pollansky during the summary process action because counterclaims for adverse possession are permitted in summary process proceedings. See *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 236, 907 A.2d 1274 (2006) (defendants in summary process action counterclaimed alleging ownership of property by adverse possession); *Top of the Town, LLC* v. *Somers Sportsmen's Assn., Inc.*, 69 Conn. App. 839, 842 n.2, 797 A.2d 18 (defendant in summary process proceeding asserted counterclaim alleging ownership by virtue of, inter alia, adverse possession and prescriptive easement), cert. denied, 261 Conn. 916, 806 A.2d 1058 (2002). Because the plaintiff could have raised this claim against Anna Pollansky in the summary process action, he is foreclosed from raising it in the present case.

[9] Because unjust enrichment and quantum meruit are related causes of action, we consider them together. See *Gagne* v. *Vaccaro*, 255 Conn. 390, 401, 766 A.2d 416 (2001) (analyzing quantum meruit and unjust enrichment claims together); *Sidney* v. *DeVries*, 215 Conn. 350, 351–52 n.1, 575 A.2d 228 (1990) (noting quantum meruit and unjust enrichment are both noncontractual causes of action grounded in principles of restitution); *United Coastal Industries, Inc.* v. *Clearheart Construction Co.*, 71 Conn. App. 506, 511–12, 802 A.2d 901 (2002) ("[q]uantum meruit and unjust enrichment are common-law doctrines that provide restitution, or the payment of money, when justice so requires").

[10] The court in the summary process action also rejected the plaintiff's claim that he had acquired an ownership interest by virtue of General Statutes § 47-30, which provides in relevant part: "Final judgment shall not be rendered, in any action to recover the possession of land, against any defendant who has, in good faith, believing his title to the land in question absolute, made improvements on the land before the commencement of the action . . . until the court has ascertained the present value of the improvements and the amount reasonably due the plaintiff from the defendant for the use and occupation of the land. If the value of the improvements exceeds the amount due for use and occupation, execution shall not be issued until the plaintiff has paid the balance to the defendant . . . ." The court reasoned that this statutory provision did not apply to summary process actions, which are concerned with possession or occupancy of land, but instead applied to ejectment actions where title is in dispute. The court also noted that even if § 47-30 was applicable to summary process actions, that provision only applies to a party who, "in good faith, believ[ed] his title to the land in question is absolute . . . when he made improvements . . . ." (Internal quotation marks omitted.) The court found that, to the extent the

plaintiff made any improvements, he did so at a time when title to the Coventry property was either absolutely vested in Andrew Pollansky and Anna Pollansky or solely in Anna Pollansky by right of survivorship. This determination did not, however, resolve whether the plaintiff was entitled to money damages separately from his claimed ownership interest.

[11] The plaintiff is not entitled to a reversal of his unjust enrichment and quantum meruit claims with respect to the Mansfield property. See footnote 4 of this opinion.

———————————————